### GULF, C. & S. F. R. CO. v. RUTLEDGE.

No. 25857.   June 11, 1935.

Rehearing Denied July 16, 1935.

246

Rainey Flynn, Green & Anderson and Abernathy, Howell & Abernathy, for plaintiff in error.

Randall Pitman, for defendant in error.

PER CURIAM. The defendant in error will be referred to herein as plaintiff, and plaintiff in error as defendant, as they appeared in the trial court.

The plaintiff filed his petition in the superior court of Pottawatomie county on August 15, 1933. Embraced therein are two causes of action. In the first cause of action it is charged that the plaintiff sustained damage by destruction of his crops on a farm on Little river in the year 1932, because of the negligence and carelessness of the defendant in construction, operation, and maintenance of its railway across Little river bottom near the land plaintiff was cultivating, by causing overflow water to run across and stand upon the land and crops of the plaintiff in the year 1932. The second cause of action is for like destruction of crops for the year 1933.

The plaintiff was a tenant farmer and the land was owned by one A. B. Jones, from whom the defendant procured its right of way to build its railroad. In due course the defendant answered. The defendant pleaded by way of defense that in procuring the right of way the landowner, plaintiff's landlord, executed a conveyance which contained a release from all damages that might accrue because of constructing the roadbed. The language of the conveyance is as follows:

"That said parties of the first part, for themselves, their heirs, executors, administrators and assigns hereby acknowledge full settlement and satisfaction of any and all claims, demands and causes of action on account of any damage or injury which may have heretofore accrued or which may hereafter accrue to any and all of the above-described real estate on account of said railway company locating and constructing its railroad track over and across the same, and on account of the construction of its roadbed thereon, and on account of changing the flow of any stream or natural watercourse thereon, including any and all damages which may accrue as to natural and probable result of the construction of said railroad over and across any and all of the lands above described."

It is pleaded that the conveyance precluded recovery for the damage complained of because said damages were in contemplation when the instrument was executed. The defendant pleaded further defense that on the 3rd day of June, 1932, a few hours prior to the destructive overflow of Little river, there fell along the river an extraordinary rainfall which caused the inundation and was an act of God for which the defendant was in no way responsible.

Several other tenant farmers filed similar suits seeking damages in different amounts; the causes seem to have been consolidated and tried together.

The trial of the cause was completed on the 7th day of February, 1934, resulting in a verdict of the jury in favor of the defendant on the first cause of action; and in favor of the plaintiff on the second cause of action. Motions for a new trial were filed by both the plaintiff and the defendant. Each of the motions was overruled and judgment was entered in favor of the plaintiff and against the defendant on the verdict of the jury on the second cause of action. From such judgment, and the order of the court overruling its motion for a new trial, the defendant appeals. There is no cross-appeal prosecuted by the plaintiff.

In the motion for a new trial, and likewise in the petition in error of the defendant, many assignments of error are made. It is stated in the brief by the plaintiff in error that they rely upon proposition 1, which in the brief is stated as follows:

"Defendant is released from any and all liability on account of the location and construction of its railroad track over, and on account of the construction of its roadbed on, the A. B. Jones land."

It appears that this release from damages was procured on February 23, 1904, and it is under the conveyance in which the lease was incorporated that the plaintiff in error was operating at the time of the alleged destruction of crops. The complaint is made that the crops were damaged in the year 1932 and in 1933. The landowner who executed the conveyance and release of damages was still the owner of the land, and was the landlord of the plaintiff at the time of the destruction of their crops. The conveyance and release from damages would have been and should have been a sufficient answer to any claim made by the landowner from damages of the character complained of by his tenants, unless it had been shown that there was something faulty and negligent in the construction of the roadbed, or

that the operation of the railway was carried on in a faulty, negligent and careless manner which resulted in damage. The defendant would be required under the conveyance and release to construct and operate its railway in a manner free of negligence and carelessness. And if the defendant railway company constructed, maintained, and operated its railroad in a manner free of negligence and carelessness, it would in no manner have been liable to the landowner for such construction, maintenance, and operation.

A similar proposition arose in the case of Updegrove v. Pennsylvania S. V. R. Co., reported in 19 Atl. 283, where the Pennsylvania court held:

"A release of the right of way to a railroad company would be a vain thing if the company is to be subsequently subjected to litigation for every injury or damage resulting to the property by reason of the construction of the road. All these matters are supposed to be . in the contemplation of the parties when the company pays its money for the right of way, and obtains a release therefor."

The company purchasing the strip of land over which the railroad was constructed paid to the landowner the sum of $3,500 for the conveyance and release of damages. Such damages might result from a proper construction, maintenance and operation of the railway and the money was accepted and the conveyance and release executed and delivered. A release by the landowner of damages by reason of construction, maintenance, and operation of the railroad was the thing purchased and undoubtedly the landowner would be bound thereby, unless it might at some time develop that the maintenance and operation of the roadbed was done in a careless and negligent manner.

In Hoffeditz v. Southern Pennsylvania Railway & Min. Co. (Pa.) 18 Atl. 125, in discussing a conveyance and release of a similar nature, the court said:

"Plaintiff, for a valuable consideration, 'released, remised, quitclaimed, and forever discharged' a railroad company and its successors 'of and from all suits, claims, demands and damages whatever, for, upon, or by reason of their entry upon and taking and occupying the above-described narrow pieces or strips of land, and the location and construction thereon of the said railroad, and works connected therewith.' A culvert and embankment on plaintiff's said land, as now maintained by defendant as a part of its railroad, was constructed and completed before the execution of the above release.

Held, that the release was a bar to an action for damages caused by water from such culvert."

In the case of Gulf, Colorado & Santa Fe Railway Co. v. Thornton, 109 S. W. 220, in dealing with a release somewhat similar to the one under consideration, the Court of Civil Appeals of Texas says:

"A release of a railroad by the owner of land from liability on account of any and all claims for damages he had or might thereafter have against the railroad by reason of the construction and maintenance of its roadbed, causing overflow of the land, it being stipulated said agreement should run with the land and operate against the owner's assigns, bars recovery * * * from overflow so caused."

The rule is that a release of the character executed by the landowner bars him from a recovery for any damages to his land or crops growing thereon caused by overflow which might have been caused by a proper construction, maintenance and operation of the railway.

Then the question arises about whether the tenants are in any better position to recover damages than would have been the landowner himself. The tenants began operations on the land with full notice of the fact that the railroad had been constructed and was being maintained and operated on the strip of land conveyed by their landlord. The plaintiff had begun farming operations on the land where he had his crops with constructive notice of the character of conveyance and release which his landlord had executed in favor of the railway company. The instrument was duly recorded in the proper recording office.

It is plain that the plaintiff had no greater rights than the landowner himself would have had and was bound by the terms of the conveyance and release which was executed in favor of the railway company by his landlord. Then a cause of action could not be predicated upon a proper construction, maintenance and operation of the railway. The plaintiff would be under the necessity of showing that the maintenance and operation of the railway was done in a careless and negligent manner which resulted in his damage.

The proof in the case is ample that the destruction of the crops in the year 1932 was caused by an unprecedented rainfall on Little river, which produced the overflow, and the jury returned a verdict in favor of the defendant upon the first cause

of action, manifestly because they were convinced that the destruction was caused by an Act of God and not by reason of any negligence and carelessness upon the part of the defendant in the maintenance and operation of its road.

It is contended that a borrow ditch was filled by the washing out of certain portions of the railway embankment, and that it was the duty of the railway company to reconstruct the borrow ditch so as to drain the land, and it is contended that the failure to reconstruct the borrow ditch was carelessness and negligence on the part of the railway company, and that it is therefore liable to the plaintiff for the damages which accrued to him in 1933. This leads to a statement of the defendant's second proposition which is stated in the following language:

"It is our contention that no duty rested upon the defendant with regard to the maintenance of said borrow ditch, and that under the undisputed evidence in this case the trial court committed reversible error in giving to the jury instructions numbered 12 and 15-A."

Instruction No. 12 is as follows:

"No. 12. You are instructed that where a railway company attempts to alter the course of the natural drainage of a tract of land, it must provide sufficient means for the escape of the flow of such water, and where it attempts to gather up the water into ditches, it must care for it so that it will not do injury to an abutting landowner greater than would have resulted had it not interrupted the natural drainage of said watercourse."

In instruction No. 15-A the court gave to the jury the further instruction, as follows:

"No. 15-A. And you are further instructed that if you find by a fair preponderance of the evidence in these cases that the defendant railway company was negligent in permitting the drainage ditch along its right of way to be filled and obstructed by the washing of its railway dump into said ditch, and permitting the same to be obstructed, and that said plaintiffs were damaged thereby, you will find for the plaintiffs on their second cause of action, as follows"

—and then in the instruction sets out the maximum amounts for which verdicts might be returned. and after such statement of maximum amounts the court further said:

"But, on the other hand, if you fail to so find, or if you believe that said flood and damages was caused by an Act of God, as claimed by the defendant, then your verdict will be for the defendant."

Instruction No. 12 in effect told the jury that it was the duty of the railway company in altering the course of the natural drainage to apply sufficient means for the escape of the water and care for it so that it would not do injury to the abutting landowner greater than it would had the drainage not been interrupted. And in instruction No. 15-A the court left the matter as a question of fact as to whether the filling up of the borrow ditch was caused by an Act of God, the unprecedented overflow of 1932.

The instructions so given were correct statements of the law and the giving of them would have been proper if it were shown that it was the duty of the defendant to reconstruct the borrow ditch after it had been filled up by the overflow of the year 1932. If there had been evidence that it was the duty of the defendant to maintain the borrow ditch and it had carelessly and negligently failed, then the declaration of law given in the two instructions would perhaps be correct. Then the question arises about whether it was the duty of the defendant, railway company, to reconstruct the borrow ditch after it had been filled up; and this leads to an examination of the evidence.

At the time of the construction of the railway across the Jones land, the land being cultivated by the plaintiff had not been prepared for cultivation. It was several years after the construction of the railway before this land was prepared for cultivation. At the time of construction of embankment for a roadbed no borrow ditch was constructed. It was shown by the defendant by one witness that he, witness, became a leaseholder under the landowner. This seems to have occurred as late as 1913, several years after the construction of the embankment. This witness testified in effect that he prepared the drainage for this land, cutting ditch and building levee. Some part of the ditch which he fixed for drainage of the land was done on the railway right of way after having procured permission from the roadmaster, the ditch being about ten feet inside of the right of way fence; and he further states that he maintained this drainage year by year, and was there on the land until about the year 1918. He says that during the years that he was there he never lost an acre of crop. There is no appearance from his testimony

that the defendant, railway company ever had anything to do with creating the drainage other than simply permitting him to cut part of it on the right of way. He testified that he did it for the purpose of draining the land and putting it into cultivation; and that the landowner, A. B. Jones, paid the expenses. There is no evidence in the record that the defendant, railway company, cut drainage.

Under this evidence it is plain that the then tenant acquired a mere permissive right to go upon the land for the purpose of creating a drainage ditch. It is plain from evidence that this was the condition that existed when the plaintiff herein went upon the land and it became a part of his business in going upon the land for the purpose of cultivating it to maintain a drainage.

It is plain from the evidence that the defendant, railway company, did not construct the drainage and was in no manner bound to maintain the drainage after it had been constructed. The drainage was prepared by the landowner or by his tenants, and by their creation of such drainage they could not foist upon the railway company the duty to maintain it. That being true the defendant, railway company, was under no obligation to clear the drainage ditch.

There is no evidence in the record in any manner tending to show faulty construction of the roadbed across the Little river bottom where the plaintiff's land lay. The evidence is all the other way. There is no evidence that the defendant, railway company, was careless and negligent in the maintenance of its roadbed. There is no evidence in the record in any manner tending to show that there was a duty resting upon the defendant, railway company, to clear the ditch after it had been filled by the overflow of 1932.

We are not unmindful of the rule so often stated by this court, that if there is any evidence reasonably tending to support the conclusion of the jury the verdict will be upheld.

Another rule of this court is as follows:

"Where there is no competent evidence reasonably supporting the verdict of the jury, such verdict and judgment rendered thereon will be set aside on appeal." McGraw v. Hildebrandt, 89 Okla. 140, 214 P. 688; Cook v. First National Bank, 110 Okla. 111, 236 P. 883; Moses v. Harris, 111 Okla. 54, 237 P. 591.

This is the rule applicable in this case since there appears no competent evidence reasonably tending to support the verdict.

The instructions Nos. 12 and 15-A were not authorized by any evidence taken at the trial and are clearly erroneous. This cause is reversed and remanded for further proceedings not inconsistent with this opinion.

The Supreme Court acknowledges the aid of Attorneys James M. Shackleford, W. N. Barry, and James C. Wright in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Shackleford and approved by Mr. Barry and Mr. Wright, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, WELCH, PHELPS, and GIBSON, JJ., concur.